IN THE UNITED STATES COURT OF FEDERAL CLAIMS

REV. FR. PRISCO E. ENTINES, MR. ELEAZAR P. ANDOQUE, and MRS. OLYMPIA A. SAARENAS

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

No. 96-740 C

FILED NOV 22 1996

COMPLAINT

Plaintiffs Filipino World War II soldiers and veterans, their survivors and their dependents, represented herein by Rev. Fr. Prisco Entines, Mr. Eleazar P. Andoque and Mrs. Olympia A. Saarenas, for its complaint against defendant state as follows:

JURISDICTION

1. Jurisdiction is conferred upon this Court pursuant to 28 USC Sec. 1491.

## THE PARTIES

2. Plaintiffs are members of the class of Filipino veterans who fought under the United States Armed Forces during the Second World War as members of the Philippine Commonwealth Army called into service by the United States government on July 26, 1941, as well as members of guerilla resistance units organized in the Philippines during the Second World War and duly recognized by the United States government, represented herein by Eleazar P. Andoque, ASN 037888. The class also includes the survivors and dependents of these veterans likewise represented by Rev. Fr. Prisco E. Entines, son of deceased Filipino World War II veteran Enrique Hapa Entines, Serial No. 27 859 525 S-2, and Olympia A. Saarenas, widow of Filipino WW II veteran Renato F. Saarenas, also deceased.

3. Defendant is the United States of America.

## FACTS OF THE CASE

4. At the end of the Spanish-American war, Spain ceded the Philippine Islands to the United States by virtue of the Treaty of Paris, 30 Stat. 1754, 1759, dated December 10, 1898. The islands remained a United States possession until 1946. In 1934, the United States Congress passed the Philippine Independence Act, P. L. 73-127, 48 Stat. 456, 463 (1934), creating a commonwealth government for these islands, and authorized the President of the United States to call into the service of the United States Armed Forces the organized military of the Philippines. This Act also set a ten-year timetable for the eventual granting of independence to the Philippines. This was delayed, however, because of events now part of history and described below.

5. On July 26, 1941, then President of the United States, Franklin Delano Roosevelt, issued an Executive Order, 6 Fed. Reg. 3825, calling into the service of the United States Armed Forces all military forces of the commonwealth government of the Philippines. On December 7, 1941, the Japanese attacked Pearl Harbor and as a result, the United States entered the Second World War. All throughout the war, the Filipino soldiers fought side-by-side with the Americans. That these Filipino

soldiers and veterans served in the United States military with valor, gallantry and courage during the Second World War is beyond dispute. History has already credited them with cutting short that war - thereby saving American lives and resources.

6. Despite the induction of these members of the Philippine military into the United States Armed Forces, they were never given the same pay, allowances or benefits as all the other soldiers in the same armed forces.

COUNT I

7. All of the preceeding paragraphs are hereby incorporated herein by reference.

8. Sometime in August, 1941, pursuant to then President's Roosevelt abovecited executive order dated July 26, 1941, the United States began to integrate the Philippine military into its armed forces in increments through various general orders. On December 18, 1941, all the members of the Philippine military not yet called into service were formally inducted into the then newly-formed United States Armed Forces in the Far East (USAFFE) by virtue of the publication of USAFFE GO 46, copy of which is hereto attached as Annex "A". Upon their induction into the USAFFE, the members of the Philippine military became members of the army of the United States. As such, the Articles of War were made applicable to them, foremost of which were the 58th and 61st articles governing Desertion and Absence Without Leave - the former punishable by death.

9. As such, in the same manner that they were subject to the same liabilities and obligations as any other member of the United States Armed Forces, they were just as entitled to the same rights and privileges - including the same pay and allowances. At that time, the applicable primary basic pay statute for enlisted men was P. L. 76- 783, 54 Stat. 885 (1940), as amended by an Act of December 20, 1941, 55 Stat. 844, then known as the Selective Training and Service Act of 1940.

10. As a direct result of the aforementioned Executive Order dated July 26, 1941 that led to their induction into the United States Armed Forces, the United States was bound by that primary basic pay statute to pay these soldiers the same prevailing wages and allowances that every other soldier in the United States Armed Forces was receiving then.

11. Despite this executive order however, these soldiers of the United States Armed Forces, and plaintiffs herein, were paid contrary to, and in violation of the terms of this pay-mandating

statute. In the case of enlisted men, they were paid at a rate that was only equivalent to some 23 % to 50 % of what was earned by other personnel of the same United States army. *See* Office for the Center of Military History, The Status of Members of Philippine Military Forces During World War II (June, 1973) ( an unpublished manuscript prepared for the government's use in *FAVADA v. United States,* 391 F. Supp. 1314 (1974) Table II at 33, hereinafter "OCMH Study".

12. Plaintiffs herein who served as soldiers of the United States Armed Forces in the Second World War are entitled to backpay in the amount represented by the difference in the pay they actually received, and the pay received by other members of the United States military as mandated by the primary basic pay statute then.

COUNT II

13. All of the preceding paragraphs are hereby incorporprated herein by reference.

14. Even if the aforementioned Executive Order of then President Roosevelt leading to the induction of these soldiers into the United States military did not, by and of itself, entitle them to the same pay and allowances authorized by law for all personnel of the United States Armed Forces, there was another regulation issued by the executive department that did entitle them to such.

15. On 28 October, 1944 then Philippine Commonweath President Sergio Osmena, who succeeded Manuel Quezon upon the latter's death, issued Executive Orders Nos. 21 and 22. The former declared recognized guerilla units to be in the active service of the Philippine Army, and the latter raised the pay scale of the soldiers of the Philippine Army, including members of such duly recognized guerilla units, to a level that was equal to and at par with the other members of the United States military. The said orders were published in Headquarters, United States Armed Forces in the Far East Circular No. 100, 17 November 1944, and copies therof are also hereto attached as Annex "B".

16. The authority of the Philippine Commonwealth President to raise their pay while these soldiers were in the service of the armed forces of the United States is evidenced by the issuance of a prior unnumbered Executive Order of 10 March 1942 by then Philippine Commonwealth President Manuel Quezon raising the pay scale of these Filipino soldiers and the publication of this then newly established pay rates in the United States Army Office of the Chief of Finance, Services of Supply,

U.S. War Department, Finance Bulletin No. 136, 25 November, 1942 "...for the information and guidance of all Finance Officers...", copy thereof is likewise hereto attached as Annex "C".

17. The aforementioned Executive Orders, were valid regulations of an executive department which not only gave duly recognized resistance units official status in the Philippine army, but also mandated the raise and eventual equalization of the pay of all members thereof, and defendant's failure to give them the pay as mandated gives rise to a money claim in favor of these Filipino soldiers against the United States.

18. Thus, these same Filipino soldiers and plaintiffs herein, are entitled to backpay amounting to the difference between the actual pay and allowances they received, and pay and allowances equal to other members of the same United States Armed Forces serving then that they should have been getting, as provided by the abovementioned Executive Orders.

COUNT III

19. All of the preceding paragraphs are hereby incorporated herein by reference.

20. Furthermore, at around the same time as the issuance of the abovecited Executive Orders, there were other agency actions of similar nature. The then Secretary of War authorized percentage increases in Philippine Army pay proportionate to those received by other personnel in the United States Armed Forces during the war, *see* OCMH Study at 40. There is no record of this having ever been implemented.

21. By virtue of the authority of this order of the head of an executive department mandating those pay raises, a money claim against the United States arises as the pay rates for members of the Philippine Army should have been raised at least in proportion to the percentage increases received by other members of the United States Armed Forces.

22. Hence, these Filipino soldiers and plaintiffs herein are at the minimum entitled to backpay representing the amounts equivalent to the aboveprescribed proportionate percentage increases.

COUNT IV

23. All of the preceding paragraphs are hereby incorporated herein by reference.

24. Defendant United States has, by law, made a full array of comprehensive benefits

available to any and all persons who render active military service for a minimum period and are discharged under terms other than dishonorable. Certain benefits require wartime service, and the law has recognized active military service during the Second World War as such. But the principal basis for entitlement to veterans' benefits is past service in the active military or navy of the United States, 38 U.S.C. Sec. 101(2). So that for as long as a person renders service in the United States Armed Forces, he or she should be eligible for veterans' benefits.

25. Any one, therefore, who becomes a member of the United States Armed Forces has more than a unilateral expectation of veterans benefits - he or she has a legitimate claim of entitlement to them. And entitlement to government benefits arising from law or contract is property interest in the nature of private property, the taking of which for public use without just compensation is forbidden by the Takings clause of the Fifth Amendment to the United States Constitution.

26. On February 18, 1946, Congress inserted a rider on legislation passed as the First Supplement Surplus Appropriations Rescission Act, P. L. 79-301, 60 Stat. 14, which provided that "...service...in the organized military forces of the...Commonwealth of the Philippines while such forces were in the service of the Armed Forces of the United States...**shall not be deemed to have been active military, naval or air service for purposes of any law**...conferring rights, privileges or benefits..." (emphasis supplied). This rider is now codified in 38 U.S.C Sec. 107, which likewise provides for allowable compensation at rate of $ 0.50 for each dollar. And yet, the very same military service performed in the Philippine Army while it was still part of the United States Armed Forces is now considered to be honorable service in active-duty status in the military, air or naval forces of the United States for purposes of naturalization, Title 38 U.S.C. Sec. 1440, as ammended by Sec. 405 of the Immigration Act of 1990.

27. The practical effect of this 1946 legislation was to deny these Filipino soldiers and veterans of the United States Armed Forces in the Second World War, as well as all their dependents and survivors, of all veterans' benefits - save for certain "service-connected" deaths and disabilities. It was as if the statement being made was that although Filipino soldiers were fit enough to be called into service and fight under the American flag, they did not deserve to enjoy the same veterans'

benefits as the American soldiers with whom they fought and shared a battlefield - side by side, under one command - where all equally risked life and limb. There are thousands of non-American veterans belonging to some sixty-six other nationalities who served in the United States Armed Forces during World War II, all of whom enjoy full veterans' benefits. Only these Filipino soldiers and veterans are kept from enjoying the same benefits. To enjoy whatever benefits remain for them, they actually have to die first or get maimed, and even then benefits are available only when the circumstances are right. These Filipino soldiers and veterans, along with their families, were deprived of private property - in the form of their legitimate entitlements to veterans' benefits - for public use without just compensation.

28. Hence, plaintiffs herein are entitled to just compensation as mandated by the Takings clause of the Fifth Amendment to the United States Constitution.

ALTERNATIVE COUNT

29. All preceding paragraphs are hereby incorporated herein by reference.

30. Alternatively, at the time of then President Roosevelt's Executive Order calling the military forces of the Commonwealth of the Philippines into the service of the United States Armed Forces, the applicable law on compulsory military service was the aforecited Selective Service and Training Act of 1940. The same required conscription of all U. S. citizens, as well as of all male residents of the United States.

31. It is well-settled that Filipinos were never citizens of the United States. Jurisprudence states that the Philippines was never part of the United States. Thus, having been neither an American citizen nor a resident of the United States at the time they were inducted into the United States Armed Forces, THE FILIPINO WW II SOLDIER AND VETERAN was never under any obligation to render military service for the United States. Consequently, then President Roosevelt did not have the power nor the authority to call them into the service of the United States Armed Forces, notwithstanding Sec. 2. (a) (12) of the aforementioned Philippine Independence Act purportedly authorizing the President of the United States to call the organized military forces of the Philippines into the service of the United States Armed Forces. If Filipinos neither had a duty nor obligation to render military service, then not even the plenary powers of Congress could force them

to do so. The Thirteenth Amnedment to the United States Constitution prohibiting slavery and involuntary servitude in the first provision thereof "...within the United States, or any place subject to their jurisdiction..." is a direct limitation on the powers of Congress and invalidates any congressional act in contravention thereof.

32. Since these Filipino soldiers were not subject to conscription and there was no obligation on their part to render military service, they could not have been forced to join the United States Armed Forces as "inductees". Their enlistment could only have been voluntary, and a contractual relationship was thus established. In the absence of enlistment contracts, what arose were implied-in-fact contracts between these Filipino soldiers and the United States The terms of these contracts were clear. They were to join the United States Armed Forces, subject to all the obligations and liabilities of such soldiers, in the war against the Axis powers and in particular the Japanese forces. In return, they would be entitled to the same pay, allowances and benefits enjoyed by the same soldiers. There was no mention of their being disqualified from enjoying the same veterans' benefits as the others.

33. As for the disparity in pay between these Filipino soldiers and the rest of the members of the United States Armed Forces, this did not go unnoticed. There were numerous efforts through agency acts to correct such an anomaly. In a message dated 22 February 1942, General MacArthur recommended equalization of Philippine Army pay scales to the United States army, Radio RN-3, MacArthur to War Department, OPD WD File, OPD 240 (3-25-42), National Archives, copy thereof is likewise hereto attached as Annex "D". A similar recommendation is contained in a subsequent message, Radio No. 453, MacArthur to AGO WD, 9 March 1942, OPD WD File 240, copy thereof is likewise attached as Annex "E". This resulted in an untitled memorandum from then Army Chief of Staff General Marshall dated March 10, 1942, referring to the latter message, to then President Roosevelt adopting the recommendations, copy of said memorandum is likewise attached as Annex "F". Records show that the then Commander-in-Chief of the United States Armed Forces approved the same on March 11, 1942. As a result, the War Department sponsored legislation introduced as S.2387 equalizing the pay of these soldiers to that of all the rest in the United States Army (and Navy) which passed the Senate on 30 March 1942 and reported out favorably by the House Military Affairs Committee on 7 May 1942. The introduction of this legislation was given much publicity,

and Filipino soldiers of the United States Armed Forces took great heart and strenght from such news that in the face of almost impossible odds, they were able to accomplish their mission for that war. From all these agency actions and conduct can be inferred the intent of defendant to pay these soldiers at a rate equal to that of the other members of the United States Armed Forces.

34. However, in the weeks following the loss of a great many lives in the falls of Bataan and Corregidor, defendant United States in utter bad faith breached this contract when it determined in a government memorandum dated July, 30, 1942, copy thereof is attached as Annex "G" hereto, that there was no longer a "...need...from a strategic or economic consideration...to equalize the pay and allowances of...the Philippine Army with that of the Army of the United States...", making a recommendation to Congress that the equalization of pay bill was not necessary anymore. No official act occured, and government documents dated August 8, 1942, copies thereof are likewise attached as Annex "H" hereto, refer to a decision against any formal withdrawal of the bill because although request for such legislation was "...made at a time when the Philippine Army was in actual combat and this Army has since been destroyed, the bill was so thoroughly publicised that to withdraw it now would be a blow to Philippine anticipations. Enemy propaganda agencies would charge breach of faith after usefulness of Filipino troops have been utilized to destruction." The same official records elaborate further by explaining that "...it dare not be withdrawn without a severe blow to all the hopes of the Filipinos to be regarded in equality with the white race." Thus, no further action was taken on the said bill which was simply left to die a natural death. These declassified government files show that as early as mid-1942 - after Bataan and Corregidor had fallen and the Filipino component of the American armed forces had been rendered useless in the eyes of the military commanders because it was practically decimated - it was decided that defendant United States would never give them their due. Yet, the Filipinos were never informed of this decision, and the bill merely lapsed into oblivion.

35. Defendant has failed to honor the terms of this contract, in fact blatantly breaching the terms thereof by continuing to deny these soldiers the prevailing wages of members of the United States Armed Forces mandated then by the primary basic pay statute as well as depriving them and their dependents/survivors of the veterans' benefits they should be entitled to.

36. As for the veterans' benefits that should have been due, defendant United States, in passing aforecited legislation now codified as Title 8 U.S.C. Sec. 107, unilaterally changed the terms of this contract so flagrantly that it became an act of the nature prohibited by the non-impairment of contracts clause in Article I, Section 10 of the United States Constitution, made applicable to the federal governmnent under the due process clause of the Fifth Amendment thereto. In the more than half a century that has gone past since the end of World War II, a number of bills intended to restore benefits denied to members of the Philippine military inducted into the United States Armed Forces have been sporadically introduced in the United States Congress, but none has ever borne fruit. Continued legislative inaction on the matter can be expected. It is submitted that legislation for such restoration of benefits is not necessary. The constitutional infirmity is fatal, rendering the denial by said statute of veterans' benefits to these Filipino soldiers without any force and effect.

37. The original terms of this contract should be enforced against defendant United States so that these soldiers and veterans of the United States Armend Forces, who along with their families are the plaintiffs herein, get their due and are paid full pay, allowances and benefits in accordance with the existing terms then applicable to all the other soldiers and veterans of the United States Armed Forces and their families.

WHEREFORE, plaintiffs respectfully pray that:

1. Judgement be rendered ordering defendant to pay plaintiffs backpay in the amount representing the difference between the pay and allowances they actually received during the Second World War and the same as mandated by the primary basic pay statute in existence at the time of their induction into the United States Armed Forces.

2. In the event the primary basic pay statute is held inapplicable, judgement be otherwise rendered ordering defendant to pay plaintiffs backpay representing the same differential by virtue of a valid regulation of an executive department, Executive Order No. 22 dated 28 October, 1944 issued by the then Philippine Comminwealth President Sergio Osmena.

3. In case the abovementioned executive orders or regulations are held to be neither valid nor binding on the United States, judgement be nevertheless rendered ordering defendant to implement the order of the then Secretary of War authorizing percentage increases in the pay of the Philippine

Commonwealth Army soldiers proportionate to those enjoyed by United States Army personnel during the Second World War and pay plaintiffs backpay in the amount prescribed by such proportionate percentage pay increases as ordered.

4. Further, judgement be rendered ordering defendant to pay just compensation for the taking of plaintiffs' private property for public use resulting from legislation, now codified as Title 8 USC Sec. 107, denying full veterans' benefits to plaintiffs.

5. In the alternative, judgement be rendered enforcing the terms of enlistment contracts, express or implied-in-fact, and ordering defendant to comply with the terms of such contracts entered into by defendant with these Filipino soldiers and veterans for military services in the Second World War by paying plaintiffs full pay, allowances and benefits that any and all members of the United States Armed Forces in the Second World War were, and are, entitled to.

6. Furthermore, defendant be ordered to pay interest, attorneys' fees as well as other costs and expenses of this suit.

7.Finally, plaintiffs herein be awarded such other relief and remedies as the Honorable Court deems proper.

Dated: November 21, 1996

Respectfully submitted,

Emeterio G. Roa III
COUNSEL FOR PLAINTIFFS
Ordoveza Law Offices
2045 North 15th Street, Suite 102
Arlington, VA 22201
(703) 243-0210; (703) 524-2180 *fax*

OF COUNSEL:
Ordoveza Law Offices
2045 North 15th Street, Suite 102
Arlington, VA 22201

Annex "A"

HEADQUARTERS
United States Army Forces in the Far East
Manila, P. I.

GENERAL ORDERS )
:
No. 46 )

18 December, 1941.

1. Pursuant to provisions of the Proclamation of the President of the United States, dated July 26, 1941, all personnel of the Philippine Army on active duty and all active units of the Philippine Army, less personnel and units already accepted for service with the United States Army Forces, are hereby called into the service of the armed forces of the United States in the Philippines, effective on the date of acceptance for the period of the existing emergency, and will be accepted for such service by officers in the service of the United States Army Forces in the Philippines.

2. Personnel of the Philippine Army which may hereafter be called to active duty and units thereof which may hereafter be activated are hereby called into the service of the armed forces of the United States in the Philippines, effective on the date of acceptance, and will be accepted for such service by officers in the service of the United States Army Force in the Philippines.

By command of Lieutenant General MacARTHUR:

R. K. SUTHERLAND,
Brigadier General, GSC,
Chief of Staff.

OFFICIAL:

CARL H. SEALS,
Colonel, A. G. D.
Adjutant General .

A TRUE COPY:

s/ William Barr, Jr.
t/ WILLIAM BARR, JR.,
Captain, AGD.

REPRODUCED AT THE NATIONAL ARCHIVES

DECLASSIFIED
Authority NND 735017
By [illegible] NARA Date 11/2/94

Annex "B"
(p. 1)

UNITED STATES ... EAST

A.P.O. 501
17 November 1944

CIRCULAR )
: 
C ... 100 )

Section

| | |
|---|---|
| Executive Order No. 21 by the President of the Philippines.................................. | I |
| Executive Order No. 22 by the President of the Philippines.................................. | II |

I. EXECUTIVE ORDER NO. 21 BY THE PRESIDENT OF THE PHILIPPINES. The following Executive Order No. 21 by the President of the Philippines is published for the information and guidance of all concerned:

Executive Order No. 21

DECLARING TO BE ON ACTIVE SERVICE IN THE PHILIPPINE ARMY ALL PERSONS NOW ACTIVELY SERVING IN RECOGNIZED MILITARY FORCES IN THE PHILIPPINES

WHEREAS, many civilians residing in the Philippines of Filipino, American and other foreign citizenships, and Officers and Enlisted Men of the Philippine Army, of the armed forces of the United States and of Allied nations, have continued armed resistance against the Imperial Japanese Government since the sixth of May 1942;

WHEREAS, this action has written in blood an epic of courage, devotion and loyalty to the Government and the people of the Philippines;

WHEREAS, these military forces have contributed in a large measure to the Allied military effort and to the liberation of the Filipino people from the yoke of the Japanese invader;

WHEREAS, it is the desire of the Government of the Philippines to recognize this allegiance;

NOW, THEREFORE, I, SERGIO OSMENA, President of the Philippines, by virtue of the authority vested in me by the Emergency Powers Law, Section 22 a and Section 27 of Commonwealth Act Numbered One notwithstanding, do hereby ordain and promulgate the following:

1. All persons, of any nationality or citizenship, who are actively serving in recognized military forces in the Philippines, are hereby considered to be on active service in the Philippine Army.

2. The temporary grades of Enlisted Men, enlisted or promoted in the field by Commanders of recognized military forces or by their delegated authority, are hereby confirmed.

3. The temporary ranks of all officers, appointed or promoted in the field prior to this date by Commanders of recognized military forces, are hereby confirmed.

4. The date of entry into active service in the Philippine Army will be that of joining a recognized military force.

179

**Annex "B"**
*(p. 2)*

(CIR NO 100) RESTRICTED

5. The effective date of rank for commissioned Officers and Enlisted Men will be the date on which they were appointed or promoted to such rank by the Commanders of recognized military forces.

6. A recognized military force, as used herein, is defined as a force under a commander who has been appointed, designated or recognized by the Commander-in-Chief Southwest Pacific Area.

Done at the seat of Government in the Field, this 28th day of October, in the year of our Lord, Nineteen Hundred and Forty-Four, and of the Commonwealth of the Philippines, the Ninth.

SERGIO OSMENA
President of the Philippines.

By the President:

ARTURO B. ROTOR
Secretary to the President

II. EXECUTIVE ORDER NO. 22 BY THE PRESIDENT OF THE PHILIPPINES. The following Executive Order No. 22 by the President of the Philippines is published for the information and guidance of all concerned:

Executive Order No. 22

FIXING THE SALARIES OF THE OFFICERS AND ENLISTED MEN OF THE PHILIPPINE ARMY

Pursuant to the provisions of Section No. 90 of the National Defense Act and of the Emergency Powers Law, I, Sergio Osmena, President of the Philippines, do hereby prescribe the following schedule of salary rates and quarters allowances for officers and enlisted men of the Philippine Army, effective on dates as indicated herein, and extending for the duration of the war and for six months thereafter unless sooner terminated by competent authority.

OFFICERS

| Rank | Annual Pay | Monthly Quarters Allowance |
|---|---|---|
| Major General | ₱16,000 | ₱200 |
| Brigadier General | 12,000 | 200 |
| Colonel | 8,000 | 200 |
| Lieutenant Colonel | 7,000 | 200 |
| Major | 6,000 | 160 |
| Captain | 4,800 | 140 |
| First Lieutenant | 4,000 | 100 |
| [illegible] Lieutenant | 3,000 | 80 |
| [illegible] | 2,400 | 60 |

DECLASSIFIED
Authority NND 135017
By [illegible] NARA Date 12/6/11

REPRODUCED AT THE NATIONAL ARCHIVES

Annex "C"
(p. 1)

DEC 31 1942

MONTHLY REPORT

W973.
942136

WAR DEPARTMENT
SERVICES OF SUPPLY
OFFICE OF CHIEF OF FINANCE
WASHINGTON, D.C.

FINANCE BULLETIN)
NO. 136)

NOVEMBER 25, 1942.

PAY - ARMY OF THE PHILIPPINES.--1. SUPPLEMENTING SEC. I, FINANCE BULLETIN NO. 104, SEPTEMBER 3, 1942, THE FOLLOWING EXECUTIVE ORDER OF THE PRESIDENT OF THE PHILIPPINE COMMONWEALTH, DATED MARCH 10, 1942, EFFECTIVE MARCH 15, 1942, AND EXTENDING FOR THE DURATION OF THE WAR AND SIX MONTHS THEREAFTER UNLESS SOONER TERMINATED BY COMPETENT AUTHORITY, IS PUBLISHED FOR THE INFORMATION AND GUIDANCE OF ALL FINANCE OFFICERS:

"BY THE PRESIDENT OF THE PHILIPPINES
EXECUTIVE ORDER.

"FIXING THE SALARIES OF THE OFFICERS AND ENLISTED MEN OF THE PHILIPPINE ARMY.

"PURSUANT TO THE PROVISIONS OF SECTION NO. 90 OF THE NATIONAL DEFENSE ACT AND OF THE EMERGENCY POWERS LAW, I, MANUEL L. QUEZON, PRESIDENT OF THE PHILIPPINES, DO HEREBY PRESCRIBE THE FOLLOWING SCHEDULE OF SALARY RATES AND QUARTERS ALLOWANCE FOR OFFICERS OF THE PHILIPPINE ARMY, EFFECTIVE MARCH 15, 1942 AND EXTENDING FOR THE DURATION OF THE WAR AND SIX MONTHS THEREAFTER UNLESS SOONER TERMINATED BY COMPETENT AUTHORITY.

| OFFICERS | ANNUAL PAY | MONTHLY QUARTERS ALLOWANCE |
|---|---|---|
| MAJOR GENERAL | 16,000 | 200 |
| BRIGADIER GENERAL | 12,000 | 200 |
| COLONEL | 8,000 | 200 |
| LIEUTENANT COLONEL | 7,000 | 200 |
| MAJOR | 6,000 | 160 |
| CAPTAIN | 4,800 | 140 |
| FIRST LIEUTENANT | 4,000 | 100 |
| SECOND LIEUTENANT | 3,000 | 80 |
| THIRD LIEUTENANT | 2,400 | 60 |

"DURING THE PERIOD THAT THE RATES OF PAY HEREIN PRESCRIBED ARE EFFECTIVE THERE SHALL NOT BE PAID TO ANY OFFICER AN INCREASE OF PAY BY REASON OF LENGTH OF SERVICE, COMMONLY CALLED "LONGEVITY PAY."

"During the period that the rates of pay herein prescribed are effective there shall not be paid to any officer an increase of pay for duty requiring regular and frequent aerial flights.

Enlisted Men, Line and Medical Service

| | Monthly Pay | Monthly Quarters Allowance |
|---|---|---|
| Master Sergeant | 86 | 16 |
| Technical Sergeant and First Sergeant | 70 | 16 |
| Staff Sergeant | 60 | 16 |
| Sergeant | 51 | 12 |
| Corporal | 37 | 12 |
| Private First Class | 22 | 8 |
| Private | 18 | 8 |

Enlisted Men - Air Corps

| | Monthly Pay | Monthly Quarters Allowance |
|---|---|---|
| Master Sergeant | 86 | 16 |
| Technical Sergeant | 80 | 16 |
| Staff Sergeant | 75 | 16 |
| First Sergeant | 60 | 16 |
| Sergeant | 51 | 12 |
| Corporal | 37 | 12 |
| Pvt. 1st Class | 22 | 8 |
| Pvt. | 18 | 8 |

"Provided that no man shall suffer a reduction in pay by reason of this Executive Order.

"Done at the seat of Government in the Field, this tenth day of March, in the year of our Lord, Nineteen Hundred and Forty-two, and of the Commonwealth of the Philippines, the seventh.

MANUEL L. QUEZON,
President of the Philippines."

2. The above Executive Order makes certain amendments in the following pay tables for members of the Philippine Army, which have been in use by certain disbursing officers:

Annex "C"
*(p. 2)*



"PAY SCALE FOR MEMBERS OF THE PHILIPPINE ARMY.

"Officers are credited with actual service in the Army beginning the effective date of their appointment. In cases when the effective date is not mentioned in the order, the effective date of their appointment is based on the date the oath of office is taken. The effective date of service of officers graduating from The United States Military Academy at West Point and from The United States Naval Academy at Annapolis begin from the date of admission to the Academy. The officers are credited with their service with the Philippine Constabulary for purposes of retirement.

"PAY AND ALLOWANCES OF TRAINEES.

*  *  *

"When a trainee or an enlisted reserve while on active duty dies as a result of injury or disease contracted in the service for reasons other than his own misconduct, willful failure, the intemperate use of drugs or alcholic liquor, or through vicious or immoral habits, the President may authorize the payment of burial expenses not exceeding thirty-five pesos and a sum not exceeding one hundred pesos to the widow or dependent child or children, or in the absence of widow or dependent child to the parents of the deceased trainee or enlisted reserve; Provided, That injury or disease acquired while en route to or from the training station or mobilization center shall be considered as contracted in the service for the purpose of this section. (As inserted by Com. Act No. 385, Sec. 91-A).

*  *  *

"The tables are stated in pesos. Value of pesos 50 cents.

Annex "C"
(p. 3)



PAY AND ALLOWANCES OF OFFICERS OF THE PHILIPPINE ARMY

| Rank | Annual Base Pay (E.O.155) s. 1938. | Monthly Rates: Initial Monthly Pay | Over 5 Yrs. Ser. | Over 10 Years | Over 15 Years |
|---|---|---|---|---|---|
| AJOR GENERAL C OF S. | 8,500.00 | 708.33 | 779.16 | 857.07 | 942.78 |
| AJOR GENERAL........ | 7,800.00 | 650.00 | 715.00 | 786.50 | 865.15 |
| R[illegible]DIER GENERAL.... | 6,600.00 | 550.00 | 605.00 | 665.50 | 732.05 |
| [illegible]L............. | 5,400.00 | 450.00 | 495.00 | 544.50 | 598.95 |
| IEUTENANT COLONEL... | 4,200.00 | 350.00 | 385.00 | 423.50 | 465.85 |
| AJOR............. | 3,300.00 | 275.00 | 302.50 | 332.75 | 366.02 |
| APTAIN............ | 2,700.00 | 225.00 | 247.50 | 272.25 | 299.47 |
| IST LIEUTENANT.... | 2,220.00 | 185.00 | 203.50 | 223.85 | 246.23 |
| ECOND LIEUTENANT.... | 1,920.00 | 160.00 | 176.00 | 193.60 | 212.96 |
| HIRD LIEUTENANT..... | 1,800.00 | 150.00 | 165.00 | 181.50 | 199.65 |

| (CONT'D.) Rank | Over 20 Years | Over 25 Years | Allowances: Quarters City | Province |
|---|---|---|---|---|
| AJOR GENERAL C OF S. | 1,037.06 | 1,062.50 | 200.00 | .......... |
| AJOR GENERAL........ | 951.66 | 975.00 | 110.00 | .......... |
| RIGADIER GENERAL.... | 805.25 | 825.00 | 100.00 | .......... |
| OLONEL............ | 658.84 | 675.00 | 90.00 | 60.00 |
| IEUTENANT COLONEL... | 512.43 | 525.00 | 80.00 | 50.00 |
| AJOR.............. | 402.62 | 412.50 | 70.00 | 40.00 |
| AP[illegible]IN............ | 329.42 | 337.50 | 50.00 | 30.00 |
| I[illegible] LIEUTENANT..... | 270.85 | 277.50 | 40.00 | 25.00 |
| ECOND LIEUTENANT.... | 234.26 | 240.00 | 40.00 | 25.00 |
| HIRD LIEUTENANT..... | 219.61 | 225.00 | 40.00 | 25.00 |

NOTES:- THE OPERATION OF LAW WITH REFERENCE TO ONGEVITY PAY WAS SUSPENDED ON JANUARY 1, 1933. (ACT - 032)

'IN COMPUTING PAY OF COMMISSIONED OFFICERS, THE ONGEVITY PAY EARNED FOR SERVICES RENDERED PRIOR TO ANUARY 1, 1933, SHALL BE BASED ON AN INCREASE OF TEN ER CENTUM FOR EVERY FIVE YEARS OF SERVICE COMPOUNDED VERY FIVE YEARS, PROVIDED THAT THE INCREASE IN ONGEVITY PAY SHALL NOT EXCEED FIFTY PER CENTUM OF HE ANNUAL BASE PAY. (SEC. 846, ADM. CODE.)



"IN DETERMINING THE PAY AND RIGHTS OF RETIREMENT OF A COMMISSIONED OFFICER OF THE REGULAR FORCE OF THE ARMY OF THE PHILIPPINES, ACTIVE DUTY PERFORMED AS A COMMISSIONED OFFICER OR AS AN ENLISTED MAN IN THE ARMY OF THE UNITED STATES, AND/OR AS A CADET IN THE UNITED STATES MILITARY ACADEMY OR UNITED STATES NAVAL ACADEMY, PRIOR TO JANUARY 1, 1933 SHALL BE CREDITED TO THE SAME EXTENT AS SERVICE UNDER A REGULAR COMMISSION OR OTHER ACTIVE DUTY WITH THE ARMY OF THE PHILIPPINES. (SEC. 2, COM. ACT 150)

'.........NO OFFICER SHALL BE PAID LESS THAN THE BASIC RATE OF PAY CORRESPONDING TO THE RANK HELD BY HIM AS AN OFFICER OF THE PHILIPPINE CONSTABULARY PRIOR TO THE TAKING EFFECT OF THE 15% SALARY REDUCTION PROVIDED IN ACT NO. 4032, INCLUDING LONGEVITY PAY EARNED UNDER SECTION 846 OF THE ADMINISTRATIVE CODE PRIOR TO JANUARY 1, 1933.....' (E.O. 155, S. 1938.)

'.........OFFICERS WHOSE DUTY REQUIRES REGULAR AND FREQUENT AERIAL FLIGHTS, SHALL RECEIVE AN ADDITIONAL COMPENSATION EQUIVALENT TO TWENTY-FIVE PER CENTUM OF THE MONTHLY PAY RECEIVED BY NON-FLYING PERSONNEL OF THE SAME RANK AND GRADE.' (SEC. 2, ACT NO. 71.)

"PROBATIONARY THIRD LIEUTENANTS ARE ENTITLED TO: SUBSISTENCE ALLOWANCE OF ₱ DAILY; PAY ₱5 MONTHLY PLUS ₱0.05 DAILY; AND CLOTHING ALLOWANCE ₱50. CADETS ARE ENTITLED TO INITIAL ALLOWANCE ₱56. MONTHLY MAINTENANCE ALLOWANCE ₱80. 'RESERVE OFFICERS ON EXTENDED ACTIVE DUTY WITH THE REGULAR FORCE SHALL RECEIVE PAY AND ALLOWANCES AS PRESCRIBED BY LAW OR REGULATION FOR REGULAR OFFICERS OF THEIR RESPECTIVE GRADES.' (SEC. 95, COM. ACT NO. 1)

## PAY AND ALLOWANCES OF ENLISTED MEN OF THE LINE

| GRADE | ANNUAL RATES | MONTHLY RATES 1. | REENLISTMENT BONUS 2. | QUARTERS CITY MONTHLY | QUARTERS PROVINCE MONTHLY 3. |
|---|---|---|---|---|---|
| MASTER SERGEANT.... | 540.00 | 45.00 | 45.00 | 16.00 | 12.00 |
| FIRST SERGEANT..... | 510.00 | 42.50 | 42.50 | 16.00 | 12.00 |
| TECHNICAL SERGEANT. | 486.00 | 40.50 | 40.50 | 16.00 | 12.00 |
| STAFF-SERGEANT..... | 432.00 | 36.00 | 36.00 | 16.00 | 12.00 |
| SERGEANT........... | 360.00 | 30.00 | 30.00 | 12.00 | 8.00 |
| CORPORAL........... | 264.00 | 22.00 | 22.00 | 12.00 | 8.00 |
| FIRST CLASS PVT.... | 204.00 | 17.00 | 17.00 | 8.00 | 8.00 |
| PRIVATE............ | 168.00 | 14.00 | 14.00 | 8.00 | 8.00 |

| (CONT'D.) GRADE | INITIAL CLOTHING ALLOWANCE UPON RE-ENLISTMENT | ADDITIONAL CLOTHING ALLOWANCE UPON REENLISTMENT | DAILY CLOTHING ALLOWANCE | DAILY RATION ALLOWANCE |
|---|---|---|---|---|
| MASTER SERGEANT.... | 38.40 | 16.00 | .16 | .30 |
| FIRST SERGEANT..... | 38.40 | 16.00 | .16 | .30 |
| TECHNICAL SERGEANT. | 38.40 | 16.00 | .16 | .30 |
| STAFF-SERGEANT..... | 38.40 | 16.00 | .16 | .30 |
| SERGEANT........... | 38.40 | 16.00 | .16 | .30 |
| CORPORAL........... | 38.40 | 16.00 | .16 | .30 |
| FIRST CLASS PVT.... | 38.40 | 16.00 | .16 | .30 |
| PRIVATE............ | 38.40 | 16.00 | .16 | .30 |

"1. EFFECTIVE SEPTEMBER 5, 1938, SECTION 89 (A) COM. ACT NO. 1 AS AMENDED BY SECTION 11, COM. ACT NO. 385.

"2. AN ENLISTED MAN WHO REENLISTS WITHIN TWO MONTHS AFTER HIS DISCHARGE BY REASON OF THE EXPIRATION OF HIS TERM OF ENLISTMENT SHALL RECEIVE A REENLISTMENT BONUS EQUIVALENT TO ONE MONTH'S PAY OF THE GRADE HELD AT THE TIME OF HIS DISCHARGE. (SEC. 89 (A) COM. ACT. NO. 1)

"3. ENLISTED MEN WHO ARE NOT FURNISHED GOVERNMENT QUARTERS SHALL BE ALLOWED COMMUTATION FOR QUARTERS AT THE RATES PRESCRIBED ABOVE FOR THEIR GRADES.

**Annex "C"**
*(p. 4)*



'GRADES AND PAY OF ENLISTED MEN OF THE RESERVES SHALL BE THE SAME OF THE REGULAR FORCE, EXCEPT THAT ENLISTED MEN SHALL RECEIVE NO PAY WHILE ON INACTIVE STATUS, OR WHILE UNDERGOING ANNUAL ACTIVE DUTY TRAINING.' (SEC. 89 (B) COM. ACT. NO. 1)

## PAY AND ALLOWANCES OF ENLISTED MEN AIR CORPS

| GRADE | BASE PAY 1. ANNUAL RATES | MONTHLY RATES | REENLISTMENT BONUS 2. | QUARTERS CITY 3. | QUARTERS PROVINCE |
|---|---|---|---|---|---|
| MASTER SERGEANTS.... | 1,020.00 | 85.00 | 85.00 | 16.00 | 12.00 |
| TECHNICAL SERGEANTS. | 960.00 | 80.00 | 80.00 | 16.00 | 12.00 |
| STAFF SERGEANTS..... | 900.00 | 75.00 | 75.00 | 16.00 | 12.00 |
| FIRST SERGEANT...... | 510.00 | 42.50 | 42.50 | 16.00 | 12.00 |
| SERGEANTS........... | 432.00 | 36.00 | 36.00 | 12.00 | 8.00 |
| CORPORALS........... | 324.00 | 27.00 | 27.00 | 12.00 | 8.00 |
| FIRST CLASS PVT..... | 264.00 | 22.00 | 22.00 | 8.00 | 8.00 |
| PRIVATES............ | 204.00 | 17.00 | 17.00 | 8.00 | 8.00 |

| (CONT'D.) GRADE | INITIAL CLOTHING ALLOWANCE | ADDITIONAL CLOTHING ALLOWANCE UPON RE-ENLISTMENT | ALLOWANCES DAILY CLOTHING ALLOWANCE | DAILY RATION ALLOWANCE |
|---|---|---|---|---|
| MASTER SERGEANTS.... | 38.40 | 16.00 | .16 | .30 |
| TECHNICAL SERGEANTS. | 38.40 | 16.00 | .16 | .30 |
| STAFF SERGEANTS..... | 38.40 | 16.00 | .16 | .30 |
| FIRST SERGEANT...... | 38.40 | 16.00 | .16 | .30 |
| SERGEANTS........... | 38.40 | 16.00 | .16 | .30 |
| CORPORALS........... | 38.40 | 16.00 | .16 | .30 |
| FIRST CLASS PVT..... | 38.40 | 16.00 | .16 | .30 |
| PRIVATES............ | 38.40 | 16.00 | .16 | .30 |

"1. EFFECTIVE SEPTEMBER 5, 1938, SECTION 89 (A), COM. ACT NO. 1 AS AMENDED BY SECTION 11, COM. ACT NO. 385.

"2. AN ENLISTED MAN WHO REENLISTS WITHIN TWO MONTHS AFTER HIS DISCHARGE BY REASON OF THE EXPIRATION OF HIS TERM OF ENLISTMENT SHALL RECEIVE

A REENLISTMENT BONUS EQUIVALENT TO ONE MONTH'S PAY OF THE GRADE HELD AT THE TIME OF HIS DISCHARGE. (SEC. 89 (A) COM. ACT NO. 1)

"3. ENLISTED MEN WHO ARE NOT FURNISHED GOVERNMENT QUARTERS SHALL BE ALLOWED COMMUTATION FOR QUARTERS AT THE RATES PRESCRIBED ABOVE FOR THEIR GRADES.

"ENLISTED MEN WHO QUALIFY AS AIR MECHANICS, FIRST, SECOND, AND THIRD CLASS, SHALL RECEIVE A MONTHLY PAY OF SEVENTY-FIVE PESOS, FIFTY PESOS, AND TWENTY-FIVE PESOS, RESPECTIVELY. (SEC. 89 (A) COM. ACT NO. 71)

"PAY AND ALLOWANCES OF ENLISTED MEN MEDICAL SERVICE AND PHILIPPINE MILITARY BAND

| GRADE | BASE PAY 1. ANNUAL RATES | MONTHLY RATES | REENLISTMENT BONUS 2. | QUARTERS CITY | QUARTERS PROVINCE 3. |
|---|---|---|---|---|---|
| MEDICAL SERVICE | | | | | |
| MASTER SERGEANT.... | 540.00 | 45.00 | 45.00 | 16.00 | 12.00 |
| FIRST SERGEANT..... | 510.00 | 42.50 | 42.50 | 16.00 | 12.00 |
| TECHNICAL SERGEANT. | 486.00 | 40.50 | 40.50 | 16.00 | 12.00 |
| SERGEANT........... | 432.00 | 36.00 | 36.00 | 12.00 | 8.00 |
| CORPORAL........... | 336.00 | 28.00 | 28.00 | 12.00 | 8.00 |
| PRIVATE............ | 264.00 | 22.00 | 22.00 | 8.00 | 8.00 |
| PHILIPPINE MILITARY BAND | | | | | |
| ASSISTANT CONDUCTOR | 1,440.00 | 120.00 | 120.00 | ..... | ..... |
| SOLOIST, PROFESSOR | 960.00 | 80.00 | 80.00 | ..... | ..... |
| FIRST CLASS MUSICIAN | 768.00 | 64.00 | 64.00 | ..... | ..... |
| SECOND CLASS MUSICIAN | 672.00 | 56.00 | 56.00 | ..... | ..... |

| (CONT'D.) GRADE | INITIAL CLO. ALLOW. | ALLOWANCES ADDITIONAL C.A. UPON REENLISTMENT | DAILY CLOTH- & RATION AL- LOWANCE | |
|---|---|---|---|---|
| MEDICAL SERVICE | | | | |
| MASTER SERGEANT.... | 38.40 | 16.00 | .16 | .30 |
| FIRST SERGEANT..... | 38.40 | 16.00 | .16 | .30 |
| TECHNICAL SERGEANT. | 38.40 | 16.00 | .16 | .30 |
| SERGEANT........... | 38.40 | 16.00 | .16 | .30 |
| CORPORAL........... | 38.40 | 16.00 | .16 | .30 |
| PRIVATE............ | 38.40 | 16.00 | .16 | .30 |
| PHILIPPINE MILITARY BAND | | | | |
| ASSISTANT CONDUCTOR | 54.40 | 24.00 | .16 | ... |
| SOLOIST, PROFESSOR | 54.40 | 24.00 | .16 | ... |
| FIRST CLASS MUSICIAN | 54.40 | 24.00 | .16 | ... |
| SECOND CLASS MUSICIAN | 54.40 | 24.00 | .16 | ... |

**Annex "C"**
*(p. 5)*



"1. EFFECTIVE SEPTEMBER 5, 1938, SECTION NO. 89 (A) COM. ACT. NO. 1 AS AMENDED BY SECTION 11, COM. ACT NO. 385.

"2. AN ENLISTED MAN WHO REENLISTS WITHIN TWO MONTHS AFTER HIS DISCHARGE BY REASON OF THE EXPIRATION OF HIS TERM OF ENLISTMENT SHALL RECEIVE A REENLISTMENT BONUS EQUIVALENT TO ONE MONTH'S PAY OF THE GRADE HELD AT THE TIME OF HIS DISCHARGE. (SEC. 89 (A) COM. ACT NO. 1)

"3. ENLISTED MEN WHO ARE NOT FURNISHED GOVERNMENT QUARTERS SHALL BE ALLOWED COMMUTATION FOR QUARTERS AT THE RATES PRESCRIBED ABOVE FOR THEIR GRADES."

H. K. LOUGHRY,
MAJOR GENERAL,
CHIEF OF FINANCE.

300.5/325326 F.B. #136/1942.

RODUCED AT THE NATIONAL ARCHIVES

SECRET

Annex "D"

DECLASSIFIED
Authority NND 740112
By RAD NARA Date 10/24

[COMMU]NICATION SERVICE

NAVY DEPARTMENT

NPM 3558 RDO FT MILLS CK 91 GOV'T WP 22ND 123 GOVT WD AG WAR WASHN

The scale of pay of American and Philippine Army Officers and the scale of pay of non commissioned officers and soldiers of the American, the Scout and the Philippine Army all differ. I recommend the enactment of legislation to the effect that all officers and soldiers inducted into the American Service received for the duration of the war the same pay received by the American Army. The equalization of battle on soldiering needs no further elaboration of argument to support such action.

MACARTHUR

CXMX 22 Feb 545/5385

10

SECRET

REPRODUCED AT THE NATIONAL ARCHIVES

Annex "E"

DECLASSIFIED
Authority NND 740112
By RAD NARA Date 10/24

COPY

AG 240 (3-9-42) CONFIDENTIAL March 9, 1942
9:55 am

FROM: Ft. Mills, P.I.

TO: AGO

093.5 (3-9-42)
(3-6-42)

No. 453 from Ft. Mills March 9th

The President of the Commonwealth has this date issued an Executive Order fixing the rates of pay of officers of the Philippine Army equal to that of the United States Army, and fixing the pay of enlisted men at the rates provided for the Philippine Scouts. He is desirous of fixing pay of soldiers at the rates prescribed for the United States Army but yielded on this point in order not to exceed the pay of Scouts. I urge that the War Department endeavor to secure immediate action on the recommendations contained in my radio RN number 3 February 22d to the effect that the pay of all officers and soldiers fighting in this theatre be fixed at that prescribed for the United States Army. The question is one of intense interest to the troops here and directly affect their morale and fighting spirit. Can you not let me know without delay so that I may tell them that the War Department is endeavoring to accomplish this end.

MACARTHUR

CONFIDENTIAL

15

EXACT COPY

**Annex "F"**

REPRODUCED AT THE NATIONAL ARCHIVES

(COPY)

DECLASSIFIED
Authority NND 740112
By RAD NARA Date 10/24

CONFIDENTIAL

March 10, 1942

MEMORANDUM

911 P20098.5 (3-9-42) (3-6-42)

The attached message from General MacArthur brings up the issue of whether or not, at least for this emergency, we should pay the Filipino soldier the same amount that is paid to the U. S. soldier who is fighting alongside him in the Philippines. Heretofore, the view has been that the difference between the living requirements of the U.S. soldier and the native in the Philippines, especially in view of the U.S. soldier's higher standard of living, made it appropriate to pay the Filipino in Mex pesos what was paid to the U.S. soldier in U.S. currency -- in other words, 50 per cent less than our schedule. At the present time there is no question of different standards of living as they are fighting together on a common basis of rations and equipment and everything else. It would therefore, appear in the interests of morale that General MacArthur's request should be granted, that is, we should endeavor to secure the necessary authority -- I presume legislative -- to permit the payment of the Filipino soldier on a U.S. standard.

There are these involvements:

The number of soldiers involved will be somewhat indeterminate because it will be difficult to state just how many of those in the provinces continue to perform the duties of soldiers. Also there will be the irregular status of those engaged in guerrilla warfare.

There will also be the possible issue of the continued payment, on a U.S. standard, to Filipino prisoners of war.

Finally we might by this action become involved in the question of the rate of pay of Chinese soldiers.

My recommendation is that we meet General MacArthur's request by wiring him that the War Department will immediately institute measures to bring about the pay standards he has recommended.

(Dictated over the telephone by General Marshall.)

Note: Mrs. [illegible] states this memo [illegible] to Secy of Office of Gen. S. S. [illegible] 3/10

G. C. MARSHALL,
Chief of Staff.

Per

DWIGHT D. EISENHOWER,
Brigadier General,
Assistant Chief of Staff.

1 Incl:
Message No. 453 from
Gen. MacArthur, 3-9-42.

CONFIDENTIAL

10

(COPY)

REPRODUCED AT THE NATIONAL ARCHIVES

Annex "G"
(p. 1)

DECLASSIFIED
Authority NND 740112
By RAD NARA Date 12/24

WDGAP/240 (6-10-42)

July 30, 1942.

MEMORANDUM FOR THE LEGISLATIVE AND LIAISON BRANCH (Thru Office, Chief of Staff):

Subject: Status of S. 2387 - An act to equalize the pay of all personnel in the United States Army, the Navy, the Philippine Scouts, and the Philippine Commonwealth Army.

I. Discussion.

1. S. 2387 authorizes the Secretary of War to fix the pay and allowances of personnel of the Philippine Army not to exceed that of the officers and enlisted men of the Army of the United States. The Secretary of War is authorized, by Section 11 of the Pay Readjustment Act of 1942, to take similar action with respect to the enlisted men of the Philippine Scouts. Officers of the Philippine Scouts receive the pay and allowances of officers of the Regular Army.

2. This proposed legislation was sponsored by the War Department at the urgent request, made from Bataan, of General MacArthur (3-8-42).

3. S. 2387 passed the Senate March 30, 1942, and was reported out favorably by the House Military Affairs Committee on May 7, 1942. It is on the consent calendar of the House, and was passed over without prejudice on June 1, June 15 and July 21, 1942, respectively.

4. The appointment and enlistment in the Army of the United States of officers and enlisted men of the Philippine Commonwealth Army and enlisted men of the Philippine Scouts who are serving outside the Philippine Islands were recently authorized. Personnel of the Philippine Scouts and the Philippine Army so appointed or enlisted will thus receive the pay and allowances of the Army of the United States.

5. Personnel of the Philippine Scouts and the Philippine Army who are prisoners of war or serving in the Philippine Islands, beyond the control of the United States, would alone be affected by the enactment of S. 2387. No need now exists from a strategic or economic consideration for the Secretary of War to equalize the pay and allowances of the Philippine Scouts or the Philippine Army with that of the Army of the United States, as provided by the proposed legislation. The Chief of Finance (Colonel Webber) estimates that such equalization would

COPY TO ACCOMPANY ORIGINAL

REPRODUCED AT THE NATIONAL ARCHIVES



DECLASSIFIED
Authority NND 740112
By RAD NARA Date 10/24

annually cost about $100,000,000 which payments would take the form of credits payable at the termination of the war.

II. Action recommended.

That necessary action be taken by the War Department to inform the Congress that no need now exists for the enactment into law of S. 2387.

III. Concurrence.

Assistant Chief of Staff, OPD (     ).

DONALD WILSON,
Brigadier General,
Assistant Chief of Staff.



12

REPRODUCED AT THE NATIONAL ARCHIVES

**Annex "H"**
*(p. 1)*

DECLASSIFIED
Authority NND 740112
By RAD NARA Date 10/24

War Department Dec... [Information-Filing Form]
Division

8-6/407
(7-31/2153)

...O (7-30-42)

Returned action radio to:
OPD Classified Message Center
RMM 8-9
(Initials) (Date)

... COPY OF ROUTING FORM TO BE ... NED ONLY BY OPD ...

Subject: Status of S 2307 - An Act to Equalize the Pay of all Personnel in the United States Army, Navy Philippine Scouts, and the Philippine Commonwealth Army. Date 7-30-42 Origin G-1

Digest: Radio SWPA 8-6-42 No. C-212 (CM-IN-2218). Radio was sent to MacArthur 8-3-42 informing him of status of bill and asking his recommendations as to whether or not bill should be enacted. In radio 8-7-42, MacArthur states that although request was made at a time when the Philippine Army was in actual combat and this Army has since been destroyed, the bill was so thoroughly publicised that to withdraw it now would be a blow to Philippine anticipations. Enemy propaganda agencies would charge breach of faith after usefulness of Filipino troops had been utilized to destruction. Suggest President Quezon be consulted before negative action is taken.

Action: Noted. No action necessary. See OPD 320.2 Aus (7-22-42) in which action was taken.

Section SWP

To
- [ ] African-Middle Eastern
- [ ] Asiatic
- [ ] European
- [ ] Latin American
- [ ] North American
- [ ] Pacific
- [x] ~~Southwest Pacific~~
- [ ] Troop Movements
- [ ] Current
- [ ] Resources & Require.
- [ ] Combined Subjects
- [ ] Future Operations
- [ ] Strategy

- [ ] ~~Theaters~~
- [ ] Logistics
- [ ] Strategy & Policy

Comments:

Recommendation: File in OPD.

Section Chief W... Date 8/8/...
Group Chief Date 8/8/42
Concurrence: S.C.S.

- [x] Executive, OPD
- [ ] Deputy A.C. of Staff
- [ ] A.C. of Staff
- [x] Dispatch Desk
- [ ] Dispatch
- [x] File

Action by Col. Remaley

Signed ... Date 8-8-42

AUG 8 1942

Case 1:06-cv-00193-TCW Document 26-4 Filed 06/14/2007 Page 26 of 27
REPRODUCED AT THE NATIONAL ARCHIVES

DECLASSIFIED
Authority NND 740112
By RAD NARA Date 10/74

OPD CONFIDENTIAL
JWCR
5505 O.P.D.,G.S.

Annex "H"
(p. 2)

OPD 240 (7-30-42)

Status of S. 2387 - An Act to Equalize the Pay of all Personnel in the U.S.Army, the Navy, and the Philippine Scouts, and the Philippine Commonwealth Army. August 8, 1942.

X G-1

X Disapproved

I. Discussion.

1. The problem as it appeared here centered around the possibility of administering this act in equity to all.

2. It was felt that to take positive steps to withdraw this bill from the calendar would be simply handing the enemy a propaganda tool to further create discontent among the Far Eastern people and be interpreted by the Japanese as outward evidence of our lack of faith.

3. A monetary value cannot be placed on good will. Such is particularly true in this case in that the ultimate costs of the act cannot be foreseen.

4. The recommendations of General MacArthur in this connection were requested. He replied in substance that his original recommendation for pay equalization was designed to strengthen morale. He admits that the Filipino force is no longer extant and that its records were probably destroyed upon the capture of Corregidor, but maintains that boards of officers in the Philippines could unquestionably administer the act. He further states that the pay bill was so thoroughly publicized that it dare not be withdrawn without a severe blow to all the hopes of the Filipinos to be regarded in equality with the white race. The Japanese would most certainly charge breach of faith and capitalize through propaganda agencies. He further suggests that President Quezon should be consulted before any negative action is taken.

OPERATIONS DIVISION

CONFIDENTIAL

REPRODUCED AT THE NATIONAL ARCHIVES

DECLASSIFIED
Authority NND 740112
By RAD NARA Date 12/74

**Annex "H"**
*(p. 3)*

II. Recommendation.
That the pay bill remain on the calendar in the House until a substitute bill can be drawn which will equalize compensation as well as provide in some measure for the tremendous economic readjustments that will be necessary at the close of this war.

AUG -9 '42 PM

BB
D-1272

THOS. T. HANDY,
Major General,
Assistant Chief of Staff.

OPD WDGS

rln

MEMORANDUM FOR RECORD:

1. Gen. MacArthur was informed by radio No. 378, July 10, 1942, of the proposed action of G-1, and his recommendations were requested.

2. In C-12, August 6, MacArthur recommended that the bill not be withdrawn; that its administration could be equitably handled through boards of officers. He suggested that Pres. Quezon should be consulted before any negative action is taken.

3. In a non-concurrence in the proposed memo of G-1, a recommendation is made that the pay bill remain on the calendar in the House until a substitute bill can be drawn which will equalize compensation as well as provide in some measure for the tremendous economic readjustments that will be necessary at the close of this war.

4. Gen. MacArthur's reply has been discussed with Col. Nowland, G-1, and he agrees with the recommendations here proposed.

12